# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

DENISE GENTRY,

    *Plaintiff*,

v.

DENIS R. MCDONOUGH,[1]

    *Defendant.*

Civil Action No. 18-2138 (RDM)

## MEMORANDUM OPINION AND ORDER

Plaintiff Denise Gentry, a police officer with the Veterans Affairs Medical Center here in Washington, D.C. ("Medical Center"), brings this action against the Secretary of Veterans Affairs ("Secretary") asserting two counts, the first under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the second under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 633a. Dkt. 1. She alleges, in particular, that the Department of Veterans Affairs ("VA") discriminated against her on the basis of her sex and age when the agency selected three male candidates, at least one of whom was younger than her, for a captain position in 2017. Dkt. 1 at 5 (Compl. ¶ 14). The Secretary moves for summary judgment on two grounds. First, he argues that Gentry never applied for the positions at issue and, therefore, a cannot establish a prima facie case of sex (Count I) or age (Count II) discrimination. Second, he maintains that, even had Gentry applied for the positions, no reasonable jury could find that she was a victim of age (Count II) discrimination.

---

[1] The Court automatically substitutes the current Secretary of the VA into the case caption. *See* Fed. R. Civ. P. 25(d) (providing that "when a public officer . . . ceases to hold office while the action is pending . . [t]he officer's successor is automatically substituted as a party").

For the reasons explained below, the Court rejects the Secretary's first argument but accepts his second argument. The Court, accordingly, will **GRANT** in part and **DENY** in part the Secretary's motion for summary judgment and will enter summary judgment in the Secretary's favor on Count II of the complaint, which alleges the Gentry was denied promotion on the basis of her age.

## I. BACKGROUND

For purposes of resolving the Secretary's motion for summary judgment, the Court takes "the facts in the record and all reasonable inferences derived therefrom in a light most favorable" to Gentry. *Coleman v. Duke*, 867 F.3d 204, 209 (D.C. Cir. 2017) (quoting *Al-Saffy v. Vilsack*, 827 F.3d 85, 89 (D.C. Cir. 2016)).

### A.   Factual Background

Gentry has served as a member of the VA's police and security service since 2000. Dkt. 25-2 at 1 (Def.'s SUMF ¶ 1); *see also* Dkt. 28-1 at 1 (Pl.'s Response ¶ 1). In this suit, she alleges that the VA unlawfully discriminated against her based on her sex and age when it failed to promote her to a supervising police officer/captain position in May and June 2017. Dkt. 1 at 6–9 (Compl. ¶¶ 16–27); *see also* Dkt. 25-3 (Ex. 2, Gentry Dep. at 20). At the time, Gentry was a 56-year-old sergeant working the night shift at the Medical Center. Dkt. 25-2 at 1 (Def.'s SUMF ¶¶ 2–3); *see also* Dkt. 28-1 at 1 (Pl.'s SUMF ¶¶ 2–3). Gentry had sought a promotion to captain—also known as watch commander supervisor—beginning as early as 2012, when she unsuccessfully applied for an opening. Dkt. 25-3 (Ex. 2, Gentry Dep. at 22–23).

On Friday, May 26, 2017—the Friday before Memorial Day weekend—the Medical Center's Police Service posted an announcement for two supervisory police officer/captain positions. Dkt. 25-2 at 2 (Def.'s SUMF ¶¶ 6–7); Dkt. 28-2 at 123 (Ex. H at 5). Those positions

were posted on USAJobs, an online website, where applicants could search for open positions and submit applications. Dkt. 25-2 at 2–3 (Def.'s SUMF ¶¶ 6, 15–16); *see also* Dkt. 25-3 (Ex. 10, Coburn Dep. at 15). Because the positions were "non-bargaining" positions, the Medical Center was required to leave the postings open for at least seven days or until at least fifty applications were received. Dkt. 25-2 at 2 (Def.'s SUMF ¶ 7); *see also* Dkt. 28-1 (Pl.'s Response ¶ 7). The vacancies closed on May 31, 2017, after fifty applications were received. Dkt. 25-2 at 2 (Def.'s SUMF ¶ 7); *see also* Dkt. 28-1 (Pl.'s Response ¶ 7).

Gentry did not learn about the vacancies until after May 31, 2017, and thus she never applied. Dkt. 25-3 (Ex. 2, Gentry Dep. at 32, 37). According to one of Gentry's co-workers, Luis Rodriguez-Soto, the interim acting chief of police, Tony Hebert, told certain officers that the VA was "opening up three positions for captains," and he encouraged Rodriguez-Soto to apply. Dkt. 25-3 (Ex. 4, Rodriguez-Soto Dep. at 13). According to Rodriguez-Soto, Hebert indicated that he "had already made up his mind who he was going to give positions to," and Hebert was "basically telling us [to] apply, that the position is going to come available," and, "[i]f you make the cert list, he is the selecting official." *Id.* (Ex. 4, Rodriguez-Soto Dep. at 14). Rodriguez-Soto did not learn that the vacancy was actually posted, however, until another officer (who was on the night shift) called to tell him that "they just posted these positions." *Id.* (Ex. 4, Rodriguez-Soto Dep. at 11). Rodriguez-Soto talked to Hebert about the short turnaround and lack of notice, stressing that he would not have been able to apply if "someone hadn't called" him. *Id.* (Ex. 4, Rodriguez-Soto Dep. at 17). Hebert responded, "[W]ell, you know about it now. So apply." *Id.* Rodriguez-Soto then applied. *Id.*

The only officers that Hebert told to apply were those who worked the day shift, *id.* (Ex. 4, Rodriguez-Soto Dep. at 13, 17), and at the time Gentry worked the night shift, Dkt. 28-2 at

3

123 (Ex. H at 5).  When Rodriguez-Soto subsequently "confronted" Hebert about the difficulties some officers might have learning about the position over the holiday weekend, Hebert responded, "If they can't apply, that's their problem, that's not my problem."  Dkt. 25-3 (Ex. 4, Rodriguez-Soto Dep. at 16–17).  Because no one informed Gentry of the opening, she believes "she was not afforded the opportunity to apply."  Dkt. 28-2 at 123 (Ex. H at 5).  Had she known that the position was available, Gentry maintains that she would have applied, as evidenced by her prior interest and the fact that at the time she was working in that exact role—that is, as a captain (or supervisory officer)—on an interim basis.  *Id.* at 122–23 (Ex. H at 4–5); *see also* Dkt. 25-3 (Ex. 2, Gentry Dep. at 29–30).

Chief Hebert ultimately selected three men for the positions: Luis Rodriguez-Soto, who was 57 years old at the time; Alford Coburn, who was approximately 45 years old; and Aaron Bradford, whose age is not included in the record.  Dkt. 25-2 at 4 (Def.'s SUMF ¶¶ 23–25).

**B.     Procedural History**

Gentry filed an administrative complaint with the VA's Office of Resolution Management on September 6, 2017.  Dkt. 25-3 (Ex. 1 at 1).  That office accepted the following claim for investigation on December 27, 2017: whether Gentry "was discriminated against based on age and sex (female)" when Chief Hebert "notified only the day shift of the Supervisory Police Officer (Captain) GS-083-9/10 vacancy and did not notify her shift about the vacancy announcement."  Dkt. 25-3 (Ex. 11 at 1).  According to a written statement Gentry submitted under the penalty of perjury, "[a]ll of the [s]upervisory positions Chief Hebert posted have been given to younger male employees," and "[t]here are no female employees in supervisory roles."  Dkt. 25-3 (Ex. 3 at 3).  Gentry further attested that no one on the night "shift was aware of the openings" and that she was "the oldest [s]ergeant in [the] Police Service[] and if [she] knew an

4

announcement was coming out [she] would have applied." *Id.* (Ex. 3 at 4). "In the past," she continued, copies of job postings were left "in the control room where the dispatcher sits." *Id.* (Ex. 3 at 5). According to Gentry, she asked Hebert why he did not notify her "about the position," and, sidestepping the question, Hebert merely responded that he did not see her "name on the certificate referral list" and that "because he did not post the announcement," the question of notification "was out of his hand[s]." *Id.* Gentry further attested that Hebert told her that he "thought that [she] did not want to apply for [the vacancies] since [her] name was not on the certificate." *Id.* Finally, Gentry attested that Hebert knew that she "wanted to be promoted" but "purposefully failed to notify [her] about the vacancies," leading to the promotion of three men, who "were younger, under qualified, and not qualified to be [c]aptains." *Id.* (Ex. 3 at 4).

Gentry received a final agency decision from the VA's Office of Employment Discrimination Complaint Adjudication ("the Adjudication Office") on June 15, 2018. Dkt. 28-2 at 127, 132 (Ex. I at 2, 8). The Adjudication Office found that Gentry "establishe[d] a prima facie case" and that Chief Hebert attempted to "pre-select[]" certain individuals, including those "who worked on the day shift." *Id.* at 128–30 (Ex. I at 3–5). But, although the Adjudication Office did "not endorse pre-selection as a method to filling vacancies, [the Office] note[d] that it is not unlawful for the selecting official to favor someone whom he believes will perform the job well so long as the decision was not based on discriminatory considerations." *Id.* at 130 (Ex. I at 5). And because Gentry "fail[ed] to show that [Chief Hebert's] failure to notify her that the [captain] position would be announced involved a discriminatory motive based on sex or age," the Adjudication Office found that Gentry had failed to substantiate her claim. *Id.*

Gentry filed suit in this Court on September 14, 2018, alleging violations of both Title VII and the ADEA. Dkt. 1. The VA answered, Dkt. 8, and, following discovery, moved for

5

summary judgment on both claims, Dkt. 25. Gentry opposed that motion, Dkt. 28, and the VA filed its reply, Dkt. 29.

## II. LEGAL STANDARD

A party is entitled to summary judgment under Federal Rule of Civil Procedure 56 if it can "show[] that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility" of "identifying those portions" of the record that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). A fact is "material" if it could affect the outcome of the litigation under governing law, *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party, *see Scott v. Harris*, 550 U.S. 372, 380 (2007). The Court must view the evidence in the light most favorable to the nonmoving party and must draw all reasonable inferences in that party's favor. *See Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).

If the moving party carries this initial burden, the burden then shifts to the nonmoving party to show that sufficient evidence exists for a reasonable jury to find in the nonmoving party's favor with respect to the "element[s] essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)). The nonmoving party's opposition, accordingly, must consist of more than unsupported allegations or denials, and must be supported by affidavits, declarations, or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Celotex*, 477 U.S. at 324. That is, once the moving party carries its initial burden on summary judgment, the nonmoving party must provide evidence that would permit a

reasonable jury to find in its favor.  *See Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987).  If the nonmoving party's evidence is "merely colorable" or "not significantly probative," the Court should grant summary judgment.  *Liberty Lobby*, 477 U.S. at 249–50.

### III.  ANALYSIS

**A.    Exhaustion**

The Court must first clarify the scope of dispute before it.  In his motion for summary judgment, the Secretary notes that Gentry's complaint "makes allegations regarding positions that were open prior to May 2017."  Dkt. 25-1 at 6 n.1.  And it is true that Gentry's complaint describes in some detail her efforts to secure a caption position in 2012, including her allegations that her superior subjected her to requirements that he did not subsequently impose on other, male applicants for the same position.  *See* Dkt. 1 at 2–4 (Compl. ¶¶ 7–9).  Both counts of Gentry's complaint, moreover, reference (albeit obliquely) this episode.  *See id.* at 6 (Compl. ¶ 20) (Title VII allegations); *id.* at 7–8 (Compl. ¶ 26) (ADEA allegations).

As the Secretary correctly observes, Gentry cannot recover in this action for any discriminatory employment actions that occurred in 2012.  That is because administrative exhaustion is required to pursue a claim under either Title VII or the ADEA, *see Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998), and there is no evidence that Gentry exhausted her administrative remedies for any claim other than her discrimination claims relating to the May 2017 position, Dkt. 25-1 at 6–7 n.1; *see also* Dkt. 25-3 (Ex. 2, Gentry Dep. at 45) (acknowledging that Gentry's administrative complaint related solely to the May 2017 position).  Gentry, for her part, does not resist this conclusion.  She maintains only that she "timely filed an EEO claim on September 6, 2017[,] alleging discrimination," Dkt. 28 at 13, and acknowledges that claim related only to the May 2017 opening, as she conceded in her

7

deposition, Dkt. 25-3 (Ex. 2, Gentry Dep. at 45), and as is evident from the face of that administrative complaint, Dkt. 28-2 at 4 (Ex. A at 3) (alleging she "was discriminated against based on age and sex" when over the Memorial Day holiday weekend in 2017 the VA "notified only the day shift" about the captain vacancy "and did not notify her shift").

The Court, accordingly, concludes that the only claims Gentry has exhausted—and thus the only claims properly raised in this case—are her Title VII and ADEA claims related to the May 2017 position. As a result, Gentry's allegations relating to her efforts to secure a captain position in 2012 provide, at most, relevant background evidence in support of those claims. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

**B.     Failure to Apply**

The principal argument that the Secretary presses on summary judgment is premised on an undisputed fact—that Gentry never applied for the vacancies that were posted in May 2017. In the Secretary's view, this is dispositive because a necessary element of Gentry's prima facie cases under Title VII and the ADEA is that she applied for the positions at issue. Dkt. 25-1 at 13 (addressing Title VII claim); *id.* at 15 (same for ADEA claim). Gentry disagrees and argues that she made her interest in promotion known to Hebert and that she failed to apply only because Hebert purposefully failed to tell her about the vacancies and because the posting occurred, without her knowledge, over the Memorial Day weekend. Dkt. 28 at 8–9, 14; *see also* Dkt. 28-2 at 123 (Ex. H at 5) (arguing that "she was not afforded the opportunity to apply").

The Secretary is correct that, "[g]enerally, to establish a prima facie case of discriminatory or retaliatory non-selection or failure to promote, plaintiff must show that '(1) she is a member of a protected class; (2) *she applied for* and was qualified for an available position; (3) despite her qualifications, she was rejected; and (4) either someone filled the position or it

8

remained vacant and the employer continued to seek applicants.'" *Evans v. District of Columbia*, 754 F. Supp. 2d 30, 49 (D.D.C. 2010) (emphasis added) (quoting *Holcomb v. Powell*, 433 F.3d 889, 895 (D.C. Cir. 2006)).  Thus, in the ordinary course, a plaintiff alleging discrimination based on the denial of a promotion must have applied for the promotion that she alleges she was unlawfully denied.

There are, however, exceptions to this rule.  A plaintiff need not apply, for example, if she can prove, among other things, that "an application would have been futile," *Lathram v. Snow*, 336 F.3d 1085, 1089 (D.C. Cir. 2003), or that she "'made every reasonable attempt to convey [her] interest in the job to the employer,'" *Cones v. Shalala*, 199 F.3d 512, 518 (D.C. Cir. 2000) (quoting *EEOC v. Metal Serv. Co.*, 892 F.2d 341, 348 (3d Cir. 1990)); *see also Elam v. D.C. Fire & EMS Dep't*, No. 03-cv-1407, 2005 WL 1903557, at *5 (D.D.C. July 19, 2005) (quoting *Metal Serv. Co.*, 892 F.2d at 348).  As these decisions recognize, the elements of a prima facie case are not cast in stone, and "courts must be sensitive to the myriad of ways" that "an inference" of discriminatory action "can be created." *Metal Serv. Co.*, 892 F.2d at 348.  In this respect, courts must not lose sight of the statutory directive barring any "employment practice" used "to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a); *see also* 29 U.S.C. § 633a(a) ("All personnel actions affecting employees or applicants for employment who are at least 40 years of age" in federal agencies, including the VA, "shall be made free from any discrimination based on age.").

Although a close question, the Court is persuaded that Gentry has proffered sufficient evidence to permit a reasonable jury to find that Hebert decided in advance who he wanted to select—all three of whom were male—and that he skewed the process in their favor.  One thing

9

that makes this a close question is that Gentry does not dispute the Secretary's representations that it was "[t]he Human Resources department, not Chief Hebert, [who] was responsible for posting" the vacancy on May 26, 2017, or that the vacancy closed on May 31, 2017, "because fifty applications had been submitted." Dkt. 25-2 at 2 (Def.'s SUMF ¶¶ 5-7); Dkt. 28-1 at 2 (Pl.'s Response ¶¶ 5-7).[2] But even so, a reasonable jury could nonetheless find that (1) Hebert departed from the past practice of the Medical Center Police Service by not leaving a copy of the notice in the control room, where all officers could see it; (2) Hebert was aware that notice of the vacancies was posted just before the Memorial Day weekend and that it closed after only five days; (3) Hebert knew that Gentry was interested in the promotion, even though she did not apply; (4) Hebert only informed members of the day shift that the vacancy was coming, and he knew that Gentry worked the night shift; and (5) Hebert was selective about whom he told about the upcoming vacancy because he had already decided whom he wanted to promote.

The Secretary responds that there is no requirement that the VA post openings in any central location at the facility. *See* Dkt. 25-3 (Ex. 6, Hebert Dep. at 36) ("[T]he official VA government website USA Jobs . . . that's the only place the U.S. [g]overnment announces positions."). But that is not the point. What matters is whether Hebert told the officers that he wanted to select about the vacancy while intentionally departing from prior practice of leaving a copy of the posting in the control room, whether he knew that Gentry would have applied for the promotion if she knew about it, and whether he intentionally kept her in the dark so that she would not apply. For present purposes, moreover, it is not the Court's role to decide whether Gentry has proven these allegations by a preponderance of the evidence. That is a question for

---

[2] Gentry does maintain that the selection process was irregular because two vacancies were posted by three individuals were selected, *see, e.g.*, Dkt. 28 at 9, but that contention has nothing to do with the very short posting that occurred over a holiday weekend.

the jury.  The Court's only role is to determine whether a reasonable jury could agree with Gentry's theory of the case, and the Court is persuaded that a reasonable jury could do so.

Beyond Gentry's own statement, which she submitted to the Adjudication Office under the penalty of perjury, Dkt. 28-2 at 121 (Ex. H at 2), Gentry points to Rodriguez-Soto's testimony that Hebert "had already made up his mind who he was going to give positions to" and that "basically he was telling us to apply," Dkt. 25-3 (Ex. 4, Rodriguez-Soto Dep. at 14).  After considering similar evidence, the Adjudication Office agreed in its final decision that there was evidence that Hebert attempted to "pre-select[]" certain individuals for the position by notifying them about the opening, Dkt. 28-2 at 130 (Ex. I at 6), and it is undisputed that the three individuals whom Chief Hebert selected were men—as is every supervisory officer in the Medical Center Police Service, *see* Dkt. 25-3 (Ex. 3 at 3).  And, tellingly, when Rodriguez-Soto "confronted" Hebert about the difficulties other officers might face in learning of the opening, Hebert responded with indifference, saying "If they can't apply, that's their problem, that's not my problem."  Dkt. 25-3 (Ex. 4, Rodriguez-Soto Dep. at 16–17).[3]

The Court, accordingly, concludes that a reasonable jury could find that Hebert knowingly kept Gentry in the dark about a promotion that he knew she wanted and that he did so

---

[3] Despite the import of Rodriguez-Soto's testimony, Gentry's brief does no more than cite generally to Rodriguez-Soto's deposition transcript, *see, e.g.*, Dkt. 28 at 14, without even attempting to point the Court to the relevant portions of that transcript.  In so doing, plaintiff's counsel has required the Court to sift through that transcript to identify the relevant portions, bringing to mind the colorful adage that "[j]udges are not like pigs, hunting for truffles buried in briefs or the record."  *Potter v. District of Columbia*, 558 F.3d 542, 553 (D.C. Cir. 2009) (Williams, J., concurring) (quotation marks omitted).  Combined with Gentry's statement of undisputed material facts, *see* Dkt. 28-1—which is far from compliant with the requirements of this Court's standing order, *see* Dkt. 3—plaintiff's counsel has not only imposed a substantial burden on the Court, he has done a disservice to his client.  Mindful of the principle that "cases should be decided upon their merits whenever reasonably possible," *Teamsters Loc. 639-Emps. Health Tr. v. Boiler & Furnace Cleaners, Inc.*, 571 F. Supp. 2d 101, 107 (D.D.C. 2008) (quotation marks omitted), however, the Court will not rely on these deficiencies to grant

to favor other applicants in the process. That conclusion addresses the sole argument that the Secretary makes with respect to Gentry's sex discrimination claim—that is, that Gentry has failed to "make out a prima face case of [sex] discrimination" because she did not apply to the position, and "applying for the position is . . . an element of the claim." Dkt. 25-1 at 13. Significantly, the Secretary does not argue that Gentry lacks sufficient evidence that the Hebert (or any other VA official) discriminated against her based on her sex, and, thus, the Court need not assess whether a reasonable jury could find that Hebert (or anyone else) favored others in the application process *because of* Gentry's sex. For present purpose, then, the Court merely concludes that the fact that Gentry never applied for the position does not preclude her, as a matter of law, from prevailing on her Title VII claim.

The Court will, accordingly, deny the Secretary's motion for summary judgment with respect to Count I of the complaint.

C. **Evidence of Sex Discrimination**

Although he does so only in passing, the Secretary does, however, challenge the sufficiency of Gentry's evidence of age discrimination. He asserts: "[A]part from presenting evidence that she was, in fact, over the age of forty at the time the vacancy was posted, Plaintiff cannot point to any evidence that any arguably adverse action regarding her was caused by her age. On the contrary, Officer Rodriguez[-Soto], one of the individuals who was chosen for one of the positions advertised in the [v]acancy [announcement] was approximately the same age as Plaintiff." Dkt. 25-1 at 15. This contention, moreover, is supported by the undisputed evidence. The Secretary asserts in her statement of undisputed facts that Gentry was "fifty-six years old in

---

summary judgment in favor of the Secretary. Plaintiff's counsel is nevertheless admonished that the Court will not countenance further disregard of the Court's Local Rules or standing order.

May 2017," and that "Officer Rodriguez[-Soto] . . . was fifty-seven years old at the time he was selected for the position."  Dkt. 25-2 at 1, 4 (Def.'s SUMF ¶¶ 3, 24).  Gentry, in turn, responds that both of these facts are "undisputed."  Dkt. 28-1 at 1, 4 (Pl.'s Response ¶¶ 3, 24).  But, even more significantly, Gentry offers no argument or evidence whatsoever in response to the Secretary's argument.

Because the Secretary has carried his initial burden of demonstrating that the VA did not discriminate against Gentry on the basis of her age, the burden shifted to Gentry to offer some evidence supporting her claim.  *See Talavera*, 638 F.3d at 308.  She has failed even to attempt to carry that burden.  The Court will, accordingly, grant summary judgment in the Secretary's favor on Count II of the complaint, which alleges that the VA discriminated against Gentry on the basis of her age in violation of the ADEA.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that the Secretary's motion for summary judgment, Dkt. 25, is **GRANTED** in part and **DENIED** in part, and it is further **ORDERED** that judgment is entered in favor of the Secretary on Count II of Plaintiff's complaint.

**SO ORDERED**.

        /s/ Randolph D. Moss
        RANDOLPH D. MOSS
        United States District Judge

March 1, 2022